## A01A1436. CHIASSON v. THE STATE.
### (549 SE2d 503)

PHIPPS, Judge.

At a jury trial, Harold Chiasson was convicted of operating an unregistered vehicle,[1] driving a motor vehicle without a valid driver's license,[2] and operating a motor vehicle without proof of insurance.[3] He seeks a reversal of his convictions and sentences on grounds that the traffic stop and his pretrial detention were illegal, he is not a resident of the State of Georgia, and he did not own the vehicle he was operating. Finding no ground for reversal, we affirm.

On December 11, 1997, Officer Harper of the Douglas County Sheriff's Department stopped a 1987 van driven by Chiasson. Harper testified that he initiated the stop because the van was an older vehicle bearing a dealer's drive-out tag which, based on its weathered look, appeared to have been on the vehicle beyond the 30-day period authorized by Georgia law. When Harper approached the van and asked Chiasson for his driver's license and insurance card, Chiasson refused to produce such documentation. Harper arrested Chiasson after a records check reflected that the vehicle was unregistered and that Chiasson had no driver's license. An inventory search of the van following impoundment did not yield a driver's license, car registration, or proof of insurance.

Three days after his arrest, Chiasson was released from jail upon

---

[1] OCGA § 40-2-8.
[2] OCGA § 40-5-20.
[3] OCGA § 40-6-10.

posting an appearance bond. A bench warrant was later issued because of Chiasson's failure to appear at arraignment. After Chiasson's arrest on the warrant, this case came on for trial. At trial, Chiasson's wife testified that the van was owned by a relative who lived in Louisiana.

1. Chiasson first challenges the legality of his traffic stop.

Investigative stops of vehicles are analogous to *Terry*[4] stops and, therefore, must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct.[5] Operation of any vehicle required to be registered in the State of Georgia without a valid numbered license plate is a misdemeanor, except that, during the 30-day period within which vehicle registration is required, the purchaser of a new or used vehicle may operate the vehicle with a temporary plate issued by the dealer.[6] At the time of the traffic stop in this case, Georgia law did not require the temporary plate to show its expiration date (such a requirement was added by OCGA § 40-2-8 (b) (2) (B) (i), effective July 1, 2000). Where, as here, a vehicle was being operated with a dealer's drive-out tag that appeared faded or weathered, there is no question that a stop of the vehicle to investigate compliance with state registration law was authorized.[7]

2. Chiasson claims that after his initial arrest on the traffic charges, he was held in custody for longer than 48 hours without a commitment hearing, in violation of OCGA § 17-4-62. However, the failure to hold a timely commitment hearing does not affect the validity of later-obtained convictions.[8]

3. Chiasson challenges his conviction of operating an unregistered vehicle in that there was no proof he owned the vehicle. This challenge is without merit. The evidence clearly established that Chiasson was operating the vehicle, and OCGA § 40-2-8 (a) proscribes operation of an unregistered vehicle on any highway or street regardless of whether the operator is the owner.

4. Chiasson contends that the trial court erred in refusing to charge the jury, in accordance with OCGA § 17-9-2, that "[t]he jury shall be the judges of the law and the facts in the trial of all criminal cases."

---

[4] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

[5] *State v. Wright*, 221 Ga. App. 202, 204 (3) (470 SE2d 916) (1996).

[6] See OCGA §§ 40-2-8 (b) (2) (A), (B) (i); 40-2-20 (c).

[7] See *Burtts v. State*, 211 Ga. App. 840 (440 SE2d 727) (1994) (approving investigatory stops of any vehicles displaying dealer's drive-out tags); *Berry v. State*, 248 Ga. App. 874 (547 SE2d 664) (2001) (wherein a five-judge special concurrence would overrule *Burtts* but permit investigatory stops of vehicles with temporary tags not validly and properly displayed or appearing old, torn, or faded); *United States v. Wilson*, 205 F3d 720, 723 (4th Cir. 2000) (utilizing same approach as that suggested by special concurrence in *Berry v. State*, supra).

[8] *Dollar v. State*, 161 Ga. App. 428, 430 (4) (288 SE2d 689) (1982).

" 'It is the province of the court to construe the law applicable in the trial of a criminal case, and of the jury to apply the law so construed to the facts in evidence. While the impaneled jurors are made absolutely and exclusively judges of the facts in the case, they are, in this sense only, judges of the law.' "[9] Here, the court charged on the applicable law and instructed the jurors to apply it to the facts as found by them. We find no error in this charge.

5. Chiasson claims that, after his failure to appear at arraignment, he was arrested under a bench warrant that was defective because (1) he was not given proper notice of arraignment, and (2) information concerning the underlying offenses was not included in the warrant as required by OCGA § 17-4-41 (a).

Even if defects in the bench warrant would affect the validity of Chiasson's convictions,[10] there were no defects. Requirements for bench warrants are set forth in OCGA § 17-7-90 rather than OCGA § 17-4-41. Notice of arraignment was mailed to Chiasson's last known address as required by OCGA § 17-7-90 and returned undelivered. The bench warrant in this case complied with OCGA § 17-7-90.

6. Chiasson complains of the trial court's failure to give requested jury instructions on the statutes he was charged with violating and on application of these statutes to vehicles operated by nonowners as well as to vehicles owned by nonresidents. We find no error, as the trial court gave a full and fair jury charge on these subjects.

7. In Chiasson's final claim of error, he argues that under OCGA § 40-5-1 (15), he cannot be considered a resident of Georgia.

OCGA § 40-5-1 (15) defines the term "resident" as used in Chapter 5 of Code Title 40. Chapter 5 sets forth driver's license requirements. OCGA § 40-5-20 prohibits both residents and nonresidents from driving any motor vehicle upon a highway in this state without a valid driver's license. Chiasson's conviction of driving a motor vehicle without a valid license was not dependent upon his being a Georgia resident. For this reason, among others, this claim of error presents no ground for reversal.

*Judgment affirmed. Smith, P. J., and Barnes, J., concur.*

DECIDED MAY 23, 2001 —
RECONSIDERATION DENIED JUNE 12, 2001 — ▮▮▮▮▮▮▮

Harold J. Chiasson, Jr., *pro se.*

---

[9] *Harris v. State*, 190 Ga. 258, 263 (6) (9 SE2d 183) (1940).
[10] See Division 2, supra.

*David McDade, District Attorney, Christian Pecone, Assistant District Attorney,* for appellee.