A11A1842. WEBB v. THE STATE.
(722 SE2d 360)

PHIPPS, Presiding Judge.

After a stipulated bench trial, Dustin Webb was convicted of possession of marijuana. Webb appeals his conviction, contending that the court erred by denying his motion to suppress evidence confiscated during a search of the vehicle he had been driving. Webb asserts that the search stemmed from an unconstitutional traffic stop. Because there was the requisite articulable suspicion to warrant the investigatory stop, we affirm.

When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence

are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility . . . must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[1]

Construing it most favorably to support the trial court's findings and judgment,[2] the evidence introduced at the hearing on the motion to suppress shows the following. A church pastor testified that on June 10, 2010, at about 6:00 p.m., he noticed a truck he did not recognize parked in the church parking lot, which was private property. There were no church activities underway at the time and "everyone was gone." Two young men were inside the truck, which was parked behind the church in the back area of the parking lot. As the pastor watched the truck from inside the church, he saw the men smoking "a cigarette or . . . something lit up." At one point, one of the men passed the object to the other man. The men then got out of the truck, "went around back," and got back into the truck. The pastor telephoned a sheriff's deputy and told him that a black Ford F150 truck with two males "hanging out" was in the church parking lot; the pastor asked him to come and investigate.

The pastor testified that in the past there had been problems involving vehicles in the parking lot, with young people drinking alcohol, "making out," and participating in "other activities when people are not there." Beer bottles, condoms, "and things like that" had been found in the parking lot, and the pastor "wanted to make sure none of that" or any vandalism was occurring. He had called the deputy previously about such problems, and the deputy had been to the property to investigate. After calling the deputy, the pastor continued to watch the men for about ten to fifteen minutes, until the deputy arrived. He saw the deputy enter the parking lot as the truck was exiting, and watched the deputy initiate a stop of the truck.

The deputy testified that the pastor called him regarding a black Ford F150 truck with two male occupants in the church parking lot, and that the pastor described "what was going on." As the deputy drove into the parking lot, he saw a black Ford F150 truck with two male occupants exiting the parking lot; the deputy testified that the

---

[1] *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994) (citations, emphasis and punctuation omitted); *Arnold v. State*, 304 Ga. App. 90, 91 (1) (695 SE2d 402) (2010).

[2] See *Miller v. State*, 288 Ga. 286, 288 (1) (702 SE2d 888) (2010).

vehicle was "an exact match" of the description given to him by the pastor. After initiating a stop of the truck, the deputy exited his vehicle and approached it. He immediately detected the odor of marijuana. Webb was in the driver's seat. The deputy asked the men for identification, about their activities on the premises, and whether Webb would consent to a search of his truck. Webb consented. A search of the truck revealed marijuana[3] and a "bong"; the men told the deputy that they had used the "bong" about an hour earlier for smoking.

Webb contends that the court erred in denying his motion to suppress the evidence obtained as a result of the traffic stop because the deputy lacked reasonable suspicion to conduct the investigatory stop. Specifically, Webb asserts that the deputy lacked information regarding the make or model of the vehicle reported, and was neither told of nor observed any illegal or suspicious activity. We disagree.

> Although an officer may conduct a brief investigative stop of a vehicle, such a stop must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.[4]

> Investigative stops of vehicles are analogous to *Terry* stops, and are invalid if based upon only unparticularized suspicion or hunch. An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. This suspicion need not meet the standard of probable cause, but must be more than mere caprice or a hunch or an inclination. Therefore, even if there is no probable cause to arrest for a traffic or other offense, the Fourth Amendment allows police to stop a vehicle to investigate a reasonable suspicion of criminal activity.[5]

> The totality of the circumstances is to be taken into account in determining whether the detaining officer has a particularized and objective basis for suspecting the particular person stopped of

---

[3] After his motion to suppress was denied, Webb stipulated that the substance recovered was marijuana and that the state had proved its prima facie case for the offense of possession of marijuana.

[4] *Vansant v. State*, 264 Ga. 319, 320 (2) (443 SE2d 474) (1994) (citations and punctuation omitted).

[5] *Darden v. State*, 293 Ga. App. 127, 130 (1) (666 SE2d 559) (2008) (citations, punctuation and footnote omitted).

criminal activity.[6] Notably, "[w]hen hearsay information is supplied by an identified interested citizen, the citizen's credibility is not as suspect and the analysis is not as stringent as when information is given by an anonymous tipster; a law-abiding concerned citizen has a built-in credibility and is deemed to be reliable."[7]

In this case, the information was supplied to the deputy by an identified interested citizen who testified at the suppression hearing and who had the opportunity to observe the truck and its occupants. The citizen gave the deputy specific information about the model and color of the truck, as well as where it was parked and the gender and number of its occupants. The deputy corroborated these details through his personal observations prior to the stop. Thus, the stop was not based upon a "mere hunch, caprice or inclination."[8] The totality of the circumstances, including the truck's location, the activities of the truck's occupants as observed by the identified interested citizen, and the history of unlawful activity on the property, created a justifiable suspicion concerning the occupants' conduct and warranted a limited investigative detention to determine whether a crime was taking place or had taken place on the premises.[9] Because there existed a reasonable articulable suspicion for a brief, investigatory stop of the vehicle,[10] the trial court did not err in denying the motion to suppress.[11]

*Judgment affirmed. Andrews and McFadden, JJ., concur.*

---

[6] *Vansant*, supra.

[7] *Yearwood v. State*, 239 Ga. App. 682, 683 (521 SE2d 689) (1999) (citation omitted).

[8] See id.; *Darden*, supra.

[9] See *State v. Carter*, 240 Ga. 518 (242 SE2d 28) (1978) (motion to suppress properly denied where officer saw van leaving rear parking lot of elementary school at 1:30 a.m., a nearby high school had recently been burglarized, and he had heard a police radio alert concerning a similarly-colored van occupied by two men seen cruising a nearby neighborhood in suspicious manner); *LeRoux v. State*, 300 Ga. App. 310, 312-313 (684 SE2d 424) (2009) (affirming denial of motion to suppress based on alleged unjustified stop where officer observed no traffic violations, but defendant was driving through a private golf course at 2:30 a.m., and there had been crimes committed on the golf course after hours); *Lacy v. State*, 285 Ga. App. 647, 649 (647 SE2d 350) (2007) (motion to suppress properly denied where deputy conducted investigatory stop based upon information of a domestic dispute in the subdivision and information that the man involved in the dispute might have been drinking and had just left the house in a red pickup truck; the deputy saw a red pickup truck leaving the subdivision, and there were few other vehicles on the road); *Bozeman v. State*, 196 Ga. App. 743, 743-744 (1) (397 SE2d 30) (1990) (officer was authorized to conduct a brief investigative detention to question vehicle's occupants regarding what they were doing in car parked, for no apparent reason, in remote area of motel parking lot in a high-crime area at 4:45 a.m.); *Jones v. State*, 156 Ga. App. 730 (275 SE2d 778) (1980) (officer was justified in stopping vehicle in an uncompleted subdivision in an area with no other outlets, to ascertain occupants' purpose for being in the area and to determine what their actions had been while there, when there had been vandalism in the past and reports of various problems in new subdivisions throughout the county).

[10] See *Hudson v. State*, 253 Ga. App. 210, 211-212 (558 SE2d 420) (2001).

[11] Id. at 212.

DECIDED JANUARY 19, 2012.

*Smith, Welch, Webb & White, Christopher E. Chapman*, for appellant.

*Jamie K. Inagawa, Solicitor-General, Joseph B. Myers, Jr., Assistant Solicitor-General*, for appellee.